ROTHENBERG, J.
 

 The husband, Richard J. Guobaitis, appeals from a final judgment of dissolution of marriage, challenging, in part, the equitable distribution of the marital assets and liabilities, including the trial court’s failure to address the parties’ 2005 federal tax liability, and the award of permanent periodic alimony to the wife, Lisa Lorraine Sherrer. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 

 In October 2005, the wife petitioned to dissolve the parties’ twenty-one year marriage. At trial, the testimony demonstrated the following. The parties were married in 1984, and have one child who was born in 1994. The husband worked full-time as a physician until February 2006, and earned $250,000 in 2005. The wife worked part-time as a pharmacist, and was primarily responsible for managing the household and raising the parties’ child.
 

 In 2004, it became apparent that the husband was abusing alcohol. The parties addressed the issue, and agreed that the husband would not enter an in-patient treatment program due to its high cost.
 
 *30
 
 Instead, the husband took a medication for the treatment of alcoholism and attended Alcoholics Anonymous meetings. Unfortunately, the husband continued to abuse alcohol.
 

 In July 2005, the wife and child, with the husband’s consent, moved to South Carolina to allow the child to attend a specific school. Upon relocating to South Carolina, the wife worked as a pharmacist, earning approximately $85,000 per year. Two months later, the wife returned to Key West for a visit, and found the husband “passed out,” surrounded by drug paraphernalia. The wife subsequently learned that the husband began to use cocaine a month after she relocated to South Carolina. The wife and their child returned to South Carolina, and the following month, the wife filed the petition for dissolution of marriage.
 

 The husband worked throughout 2005. However, in February 2006, the husband was required to withdraw from the practice of medicine when two of his colleagues referred him to Physicians’ Referral Network (“PRN”), an organization that evaluates and treats health care professionals with addiction/substance abuse problems.
 

 In March 2006, the husband entered a fourteen-week in-patient treatment program, and in July 2006, after completing the program, he resumed working. The husband however relapsed, and once again, he was required to withdraw from the practice of medicine, and he entered an inpatient rehabilitation program. As of the final day of trial, which was in December 2006, the husband had not completed the in-patient rehabilitation program.
 

 At trial, Dr. John Eustace, a physician specializing in addiction medicine, testified that addiction is a disease that cannot be controlled solely by willpower because it is a neurobiological disorder. Ninety percent of the physicians who are assisted by PRN return to the practice of medicine, and Dr. Eustace opined that the husband would be in the 90% group, and should return to work within a year.
 

 The husband presented the testimony of the certified public accountant preparing the parties’ 2005 federal income tax returns. The accountant testified that, although he had not completed the tax returns, he estimated that the parties’ 2005 federal tax liability totals approximately $142,000, which includes a capital gains tax of approximately $82,000 for real property the husband sold in 2005.
 

 Following the hearing, the trial court entered its final judgment of dissolution of marriage. Although the equitable distribution of the marital assets and liabilities favors the wife, the trial court failed to set forth any reasons justifying the grossly disproportionate distribution. The trial court failed to take into account the parties’ 2005 federal tax liability, and ordered the wife to assume approximately 27%, and the husband to assume 73%, of the marital liabilities.
 
 [1]
 
 Furthermore, the wife was awarded approximately 82% of the marital assets, whereas the husband was awarded approximately 18%. Specifically, the trial court ordered that upon the sale of the marital home, the wife shall receive $760,603.26 as part of the equitable distribution of the marital assets, and shall receive the balance of the proceeds (approximately $140,000) as lump sum alimony.
 

 In addition to lump sum alimony, the trial court found that the wife was entitled to and needs $3,000 per month in permanent periodic alimony, but awarded $500
 
 *31
 
 per month because it was unclear when the husband would be permitted to resume the practice of medicine. The trial court, however, retained jurisdiction to increase the amount of alimony based on the husband’s ability to pay when he completes the rehabilitation program and resumes employment.
 

 The trial court ordered the husband, based on his income at the time of filing, to pay $1,300 per month in child support, plus 61.45% of the child’s private school tuition, which is approximately $600 per month, and medical and dental expenses. In order to ensure that child support payments are maintained during the husband’s recovery, he was ordered to transfer to the wife, via a Qualified Domestic Relations Order, $25,000 of his interest in a profit sharing plan awarded to him.
 
 [2]
 
 The husband’s appeal followed.
 

 The husband contends that the trial court abused its discretion in distributing the marital assets and liabilities. We agree.
 

 The equitable distribution of marital assets and liabilities is governed by section 61.075, Florida Statutes (2006). Subsection (1) provides that “in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors” set forth in that subsection. “An equal division of marital assets is presumptively proper under section 61.075 and thus an unequal distribution must be justified by findings made by the court.”
 
 Porzio v. Porzio,
 
 760 So.2d 1075, 1077-78 (Fla. 5th DCA 2000).
 
 See also Pomeranz v. Pomeranz,
 
 901 So.2d 895, 896 (Fla. 4th DCA 2005) (providing that “an equitable distribution plan requires ‘specific written findings of fact’ including ‘findings necessary to advise the parties or the reviewing court of the trial court’s rationale for the distribution of marital assets and allocation of liabilities’ ” (quoting § 61.075(3)(d), Fla. Stat. (2003)));
 
 Bailey v. Bailey,
 
 851 So.2d 286, 287 (Fla. 3d DCA 2003) (“[I]f a court’s distribution of the marital assets is disproportionate, then the court must make written findings in support of its distribution.”);
 
 Maddox v. Maddox,
 
 750 So.2d 693, 694 (Fla. 1st DCA 2000) (“A trial court may avoid the obligation to divide marital assets equally by making written findings justifying the decision.”);
 
 Moore v. Moore,
 
 679 So.2d 1311, 1311 (Fla. 3d DCA 1996) (holding that the “trial court erred in its allocation of the marital debt without setting forth reasons for the unequal distribution”);
 
 Bell v. Bell,
 
 587 So.2d 642, 643 (Fla. 1st DCA 1991) (“Absent countervailing circumstances, the starting point in distribution is an approximately equal division of marital assets.”).
 

 The record reflects that although the wife argued during the trial that she was entitled to an unequal distribution of the marital assets based on the husband’s alcoholism, drug abuse, and dissipation of the marital assets during the marriage, the final judgment does not state that the unequal distribution was based on these factors. While we recognize that “[t]he final judgment may offer support for the trial court’s equitable distribution even though the relevant findings are not properly labeled as finding[s] of fact pursuant to section 61.075(3),”
 
 Maddox,
 
 750 So.2d at 694, it is unclear to what extent, if any, the trial court’s distribution of the assets and liabilities relied on these factors. For example,
 
 *32
 
 although it was undisputed that the husband abused both alcohol and drugs during the marriage and his loss of employment was directly caused by his drug use, there was also evidence presented that the decision not to treat the problem aggressively with residential treatment was a joint decision by the husband and wife driven primarily by economic concerns. There was also evidence presented that the husband’s addiction is a disease that cannot be controlled solely by willpower.
 

 Likewise, although the parties acknowledge that the “intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition,” can justify a trial court’s unequal distribution of marital assets and liabilities, § 61.075(l)(i); see
 
 Bell,
 
 587 So.2d at 643 (holding that “a party’s conduct is not a valid reason to award a disproportionate amount of the marital assets to an innocent spouse unless [the conduct] depleted the marital assets”), the trial court’s order does not reflect whether this factor played any role in the distribution of the marital assets and liabilities, and the record before us does not support the inequitable distribution based on this factor. The record reflects that the husband’s non-mortgage related debt substantially increased and that the husband depleted approximately $22,000 from a retirement account after the petition was filed. However, a majority of these funds were used to maintain the parties’ marital assets and expenses while the dissolution proceeding was pending.
 

 Because the final judgment does not make specific findings, and our review of the record does not support the grossly disproportionate distribution of the parties’ assets and liabilities, we remand for reconsideration of the equitable distribution of the marital assets and liabilities. Upon remand, if the trial court enters an unequal distribution, it must make findings of fact justifying the distribution.
 
 See Franklin v. Franklin,
 
 988 So.2d 125, 126 (Fla. 2d DCA 2008) (holding that the appellate court must reverse an unequal distribution of the marital assets if the trial court fails to make specific findings of facts justifying the distribution). On remand, the trial court is also free to consider the dissipation of marital funds to purchase drugs or to fund the husband’s extramarital affair in determining the equitable distribution of the parties’ assets.
 
 [3]
 

 See Heilman v. Heilman,
 
 610 So.2d 60, 61 (Fla. 3d DCA 1992) (“Absent a showing of a related depletion of marital assets, a party’s misconduct is not a valid reason to award a greater share of marital assets to the innocent spouse.”).
 

 We also find that the trial court abused its discretion by not addressing the parties’ 2005 federal tax liability. Although the
 
 exact amount
 
 owed to the Internal Revenue Service for the 2005 tax year was not certain, there is no doubt that the parties’ federal taxes for 2005 remained unpaid and were due. As stated by Benjamin Franklin in 1789 in a letter to Jean-Baptiste Leroy: “Our new Constitution is now established, and has an appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes.” http://www. kevinstilley.com/benjamin-franklin-quotes/ (last visited July 15, 2009).
 
 See also Hunt
 
 
 *33
 

 ley,
 
 578 So.2d at 892 (holding that the trial court, in determining party’s net monthly income, erred by refusing to deduct federal income taxes just because spouse “had not yet been required to pay the taxes”).
 

 Lastly, we address the husband’s contention that the trial court abused its discretion by awarding permanent periodic alimony to the wife. We find no abuse of discretion as to the award of permanent periodic alimony, the amount ordered, or the trial court’s reservation of its jurisdiction to reconsider the amount of permanent periodic alimony to be awarded in the future.
 

 In awarding permanent periodic alimony, the trial court recognized several factors: the parties were married for twenty-one years, which is considered a long-term marriage; the husband earned approximately $250,000 in 2005, which is the year when the action was filed, whereas the wife earned less than a quarter of that amount; the parties maintained a fairly high standard of living, which included not only the marital home valued at $1,390,000, but a vacation home; and the wife was primarily responsible for raising their child and managing the household.
 
 See §
 
 61.08, Fla. Stat. (2006). Based on these factors, the trial court found that the wife needed approximately $3,000 per month in permanent periodic alimony. The trial court, however, considered the husband’s situation, and awarded $500 per month until the husband completes the rehabilitation program and resumes employment, and retained jurisdiction to increase the amount commensurate with his ability to pay. Thus, based on the specific facts of this case, we conclude that the trial court did not abuse its discretion in awarding permanent periodic alimony to the wife.
 

 In light of our holding reversing the equitable distribution of the parties’ marital assets and liabilities and remanding for reconsideration, the trial court shall reconsider the entire distribution scheme, including the award of alimony, both permanent periodic and lump sum; the equitable distribution of the marital assets and liabilities; and child support.
 
 See Rosario v. Rosario,
 
 945 So.2d 629, 631 (Fla. 4th DCA 2006) (“In dissolution cases, the trial judge has broad discretionary authority to do equity between the parties. Available remedies include lump-sum alimony, permanent periodic alimony, [and] child support. ... Because these remedies are interrelated as part of an overall scheme, it is ‘extremely important that they also be reviewed by appellate courts as a whole, rather than independently.’ ” (quoting
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1202 (Fla.1980) (citations omitted))). Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 [4]
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 [1]
 

 . If the wife refuses to file a joint tax return for 2005, the husband will be liable for the bulk of the tax liability because the property that was sold was owned by the husband and the husband earned the majority of the income in 2005.
 

 [2]
 

 . The husband has not appealed any portion of the final judgment pertaining to child support.
 

 [3]
 

 . The husband acknowledges in his brief that the record demonstrates that he spent approximately $15,000 to purchase drugs and on a ''fling.”
 
 See Huntley v. Huntley,
 
 578 So.2d 890, 892 (Fla. 1st DCA 1991) (holding that
 
 spouse
 
 was entitled to an equitable share of all marital assets, including marital resources that were "dissipated by the husband's addiction”).
 

 [4]
 

 . The remaining issues raised by the husband lack merit.